IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA SMITH CAPOBIANCO | : | CIVIL ACTION NO. **3:CV-04-0320** |
| | : | |
| | : | Magistrate Judge Blewitt |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CAMELBACK SKI CORP. | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM**

This action is presently proceeding *via* a complaint which was filed on February 12, 2004. (Doc. 1). Jurisdiction is based upon diversity pursuant to 28 U.S.C. § 1332. The Defendant filed an Answer to the Complaint with Affirmative Defenses on March 11, 2004. (Doc. 7). The Plaintiff, Patricia Smith Capobianco, parent and natural guardian of James Smith, a minor, named as Defendant Camelback Ski Corporation. The parties have consented to proceed in this action before the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 14). Discovery has been completed.

Presently pending is Defendant's December 30, 2004, Motion for Summary Judgment. **(Doc. 20)**. Defendant filed its support Brief, Statement of Material Facts ("SMF") and Exhibits. (Docs. 21-24). On January 18, 2005, the Plaintiff filed a Response to Defendant's Statement of Material Facts and a Brief in Opposition to the Defendant's Motion with attached Exhibits. (Doc. 25). On January 25, 2005, the Defendant filed a Reply Brief with Exhibits. (Doc. 26). The Motion of the Defendant for Summary Judgment is ripe for disposition.

**I. Allegations of the Complaint.**

The Plaintiff alleges that on February 23, 2002, her child, James Smith, was a patron at Camelback Ski Resort and purchased a ticket to use the ski slope. Plaintiff alleges that James was caused to fall and was seriously injured when he unexpectedly skied onto a large area of earth, devoid of any snow. Plaintiff avers that this defective and hazardous condition was unknown to James. (Doc. 1, ¶ 8.). Plaintiff claims that Defendant knew or should have known that the stated area was defective, dangerous and hazardous and would cause injury to skiers. Plaintiff states that James' injuries were a result of Defendant's negligence. (*Id.*, ¶'s 11.-12.).

Plaintiff asserts one count, namely negligence. Specifically, Plaintiff alleges as follows:

> 14. At all times material hereto, there were no warning lights, signs barriers, notices, cones or other visible markings to warn plaintiff of the complete absence of snow or presence of bare earth in the area where plaintiff was caused to fall and be injured or to prevent plaintiff from skiing onto the area or to otherwise close off the area.
>
> 15. The area where plaintiff was caused to fall and be injured was poorly and improperly lit and did not permit plaintiff to distinguish between snow and bare ground and, thus, plaintiff could not and did not comprehend his entry onto the bare ground.

(*Id.*, ¶'s 14.-15.).

Plaintiff avers that Defendant's negligence caused James to suffer a complex ulnar diaphyseal fracture of his left arm, multiple contusions, and shock and injury to his nerves. Plaintiff claims that James' injuries caused him pain and suffering, physical as well as mental. (*Id.*, ¶ 19.).

**II. Material Facts.**

Since ¶'s 1.-4., 7., 10.-12. of Defendant 's SMF are entirely admitted by Plaintiff, we shall not restate them herein. (Docs. 22 & 25). We do, however, emphasize that James was not a novice skier, that he had skied for many years, and that he was a ski instructor at another ski area.

Before he began to downhill snow ski at Defendant's ski resort on February 23, 2002, Plaintiff's son James, age 14, was required to purchase a lift ticket. James had a lift ticket on the day in question. The relevant language on the lift ticket is not disputed and is found at ¶ 7. of Defendant 's SMF. (Doc. 22). One of the risks of skiing specifically mentioned on the lift ticket is bare spots. The ticket also stated that the ticket user voluntarily assumes the risk of injury while skiing. James did not read the lift ticket before the accident. James understood that there was some printed language on lift tickets and that it was basically telling the skier to ski at your own risk. (Doc. 25, Ex. A, p. 10). James assumed the printed language on the lift ticket may have contained guidelines as to Defendant's liability, but he did not read any part of the lift tickets when he was skiing before the accident in question. *See* ¶'s 6., 8. of Plaintiff's SMF Response, Doc. 25. A complete copy of the language on the lift ticket is marked as Exhibit A to Defendant's Motion, Doc. 24.[1]

James admitted that he knew skiing was a risky sport and that people could be injured while skiing. Prior to the accident, when skiing in the past, James had seen bare spots at ski areas. However, James stated that he had "seldom" seen bare spots at ski areas. (Doc. 25, Ex. A, pp. 10-

---

1. Due to the length of Defendant's Exhibits, they were not electronically filed with Defendant's Motion and Brief, but were mailed and docketed as Docs. 23 & 24.

11).  At about 9:30 p.m. on the day in question, James, while rounding a bend and attempting to crossover from one trail to another, skied into a large open area or bare spot, approximately 40 feet across, with no snow.  (*Id*. & Doc. 24, Ex. B, p. 25, 31-32).  James stated that he could not distinguish between where there was and was not snow in the area in question.  James stated that the shadows and the lighting were tricky and that he did not have a lot of time to decide what he was going to do since he was coming around a bend.  (*Id*., pp. 11-12).  As James entered the bare area, he fell and broke his arm.  There were no markings at the bare spot where James fell.

John Capobianco, who was skiing with Plaintiff at the time in question, stated that he does not remember any specific bare areas on the slopes.  (Doc. 24, Ex. D, pp. 45-46).  He also stated that he could not see the bare spot until he was right on it, and that he could not see the difference between the snow and ground because the way the lighting was, it "made the ground surface unclear."  (Doc. 25, Ex. D, p. 54).

Defendant did not mark the bare area where James fell because it believed the area was large and obvious.  According to Defendant's ski patrol director, Timothy Fortner, ski industry standards do not require visible bare spots to be marked.  (Doc. 25, Ex. C, pp. 39-40).  Fred Klee, a ranger patrol employee of Defendant, who was not involved in the investigation after James' accident, stated that during his 20 years of working for Defendant, he has seen crossovers closed to skiers by using "lollipops" stuck in the snow or netting.  (*Id*., Ex. B, pp. 100, 103).  He agreed that "if the snow ended and then after the snow the crossover had no snow," then the lollipops would be stuck in the snow part.  (*Id*.).

**III. Standards.**

*A. Motion for Summary Judgment.*

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d *v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

*B.  Duty of Care.*

"A landowner owes a duty to protect an invitee from the condition of its premises only if he or she (1) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (2) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (3) fails to exercise reasonable care to protect them against the danger." *Colihan*, WL 141867, 3 (citing *Smith v. Allen & O'Hara Developments, Inc.*, WL 529998, 2 (E.D.Pa. 1996)) (citing Restatement (Second) of Torts, § 343)). "A business invitee is a person invited to enter the land for a purpose directly or indirectly connected with the business dealings with the possessor of the land. *Colihan*, WL 141867, 2 (citing *Ott v. Unclaimed Freight Co., et al.*, 577 A.2d 894, 896 (Pa. Super. 1990)) (citing Restatement (Second) of Torts § 332)).

More specifically, Defendant, as the operator of a recreational facility, is not the guarantor of the safety of its patron, but must use reasonable care in the operation and management of the facility, giving due consideration to the amusement provided and the customary conduct of the patrons invited. *Jones v. Three Rivers Management Corp.*, 394 A.2d 546, 483 Pa. 75 (1978); *Wood v. Conneaut Lake Park, Inc.*, 209 A.2d 268, 417 Pa. 58 91965); *Amon v. Shemake*, 214 A.2d 238, 419 Pa. 314 (1965).

While the operator of a recreational facility such as Camelback owes a duty to operate its facility using reasonable care, it does not have a duty to warn or protect its patrons, such as a skier at a ski area, from conditions which are both obvious and avoidable.  If a skier proceeds voluntarily into an area where there are obvious and avoidable conditions, he is deemed to have agreed to

6

look out for himself. This is true even if the skier denies that he saw such conditions. Whether the conditions were obvious and avoidable is a question of whether they would have been obvious and avoidable to a reasonable person exercising reasonable perception under the circumstances. A ski area has no duty to protect the skier from the risks that may exist because of such obvious and avoidable conditions. *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120, 125 91983) (icy parking lot); *Mucowski v. Clark*, ___ Pa. Super. ___, 590 A.2d 348 (1991) (shallow above ground pool); *Ott v. Unclaimed Freight*, ___ Pa. Super. ___, 577 A.2d 894 (1990) (recklessly driven ATV); *Villano v. Security Savings Ass'n.*, 268 Pa. Super. 67, 407 A.2d 440 (1979) (uneven steps).

A participant in a recreational activity such as skiing assumes as a matter of law the ordinary risks incidental to the sport. Thus, if the accident was a result of one of the normal and incidental risks of skiing, Defendant would not have any duty to protect the Plaintiff from such a risk, and with the absence of a duty, it could not be negligent in failing to protect the Plaintiff from an inherent risk. *Jones v. Three Rivers Management Corp.*, 394 A.2d 546, 483 Pa. 75 (1978) (foul balls at baseball game although not in concession area); *Taylor v. Churchill Valley Country Club*, 425 Pa. 266, 228 A.2d 768 (1976) (golf – see especially footnote 3); *Podvin v. Somerton Springs Swim Club*, 406 Pa. 384, 178 A.2d 615 (1962) (volleyball); *Oberheim v. Pennsylvania Sports and Enterprises, Inc.*, 358 Pa. 62, 55 A.2d 766 (1947) (ice skating - see especially 55 A.2d at 769); *Pestalozzi v. Philadelphia Flyers, Ltd.*, ___ Pa. Super. ___, 576 A.2d 72 (1990) (hockey pucks in stands); *Johnson v. Walker*, 376 Pa. Super. 302, 545 A.2d 947 (1988) (bystander injured while watching stickball game); *Bower v. Hershey Baseball Ass'n.*, 357 Pa. Super. 435, 516 A.2d 61 (1986) (baseball coach struck by batted ball); *Leopold v. Okemo Mountain, Inc.*, 420 F.Supp. 781 (D.Vt. 1976) (downhill

skiing).

All physical sports involve some risk of injury which are inherent to the sport, and for the sport of downhill skiing, as Defendant notes (Doc. 21, p. 6, n. 3), the Pennsylvania General Assembly has passed a law that specifically states: "It is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing." 42 Pa.C.S.A. § 7102(c)(1).

## IV. Discussion.

*A. Motion of Defendant.*

Plaintiff's Complaint centers upon the allegations that the Defendant and its employees were negligent in not marking the 40-foot bare area in question, that she claims was not visible and obvious; in not closing off the crossover to skiers; and in failing to have adequate warnings and lighting to make skiers aware of the bare area.  Defendant argues that the bare area did not require markings since it was visible and obvious to skiers, that ski industry standards did not require markings for a bare area as large and obvious as the one in question, and that based on the language on his lift ticket and his many years ski experience, James was aware that bare spots were an inherent risk of skiing.  Thus, Defendant asserts that James assumed the inherent risks of skiing, including the bare area where he fell.  Defendant then asserts that since James' injury was the result of an inherent risk of skiing, it had no duty to him, and he has no basis to recover on his negligence claim.

We find that encountering bare spots on ski slopes is an inherent risk of skiing, and that based on his experience and the lift ticket language, James knew or should have been aware of such a risk.  However, we find a genuine issue of material of fact exists as to whether the bare spot in

question was so large and obvious to skiers at the time of James' fall that it was not required to be marked under the ski industry standards and as to whether the lighting was sufficient at the crossover. Thus, we find that an issue of fact exists as to whether the Defendant deviated from the industry standards by not marking the area.

The Plaintiff claims that a factual dispute exists as to whether the 40-foot bare area in question was obvious to a skier coming around a bend to a crossover to be devoid of snow at 9:30 p.m. and whether the lighting made it difficult to distinguish between bare ground and white snow. If the bare area was so large and obvious to skiers under the undisputed circumstances of this case, then according to ski industry standards, it did not have to be marked. However, if the bare area was not obvious, then markings should have been placed to close the area to skiers. As stated, there is no factual dispute as to the language on the lift ticket and that it specifically stated that bare spots were a risk of skiing. It is not disputed that James was an experienced skier at the relevant time and that he had seen bare spots at ski areas previous to the accident while he was skiing. Further, as Defendant contends, an inherent-risk case, such as the instant case, should go to the jury only if there is adequate evidence that an amusement facility where a Plaintiff was injured deviated from industry standard. (Doc. 26, p. 3).

As Defendant recognizes (Doc. 21, p. 4), Pennsylvania law applies in this case. *See Nielsen v. Jack Frost Mountain Co.*, 1988 WL 53149, *1 (E.D. Pa.). Defendant argues that it is undisputed that an inherent risk of downhill skiing is encountering bare spots on the ski slopes and that it had no duty to protect skiers from this inherent risk of skiing. Defendant cites to several Pennsylvania cases, including *Hughes v. Seven Springs Farm, Inc.*, 762 A. 2d 339 (Pa. 2000), which essentially

held that if the injury resulted from an inherent risk of the activity, then the Defendant recreational facility had no duty to the Plaintiff. (Doc. 21, pp. 5-7). In this case, Defendant states that James' injury to his arm was the result of a bare spot which is an inherent risk of downhill skiing.

We agree with Defendant that, based on *Hughes* and the undisputed facts of our case, skiing is a sport in which it is common for skiers to encounter bare spots and that bare spots are an inherent risk of skiing. James was undisputedly skiing at the time of his accident and, based on the language of his lift ticket and based on his many years of skiing experience, he was well aware that a bare spot on a ski slope was an inherent risk of skiing. James, while knowing that bare spots were an inherent risk of skiing, chose to continue skiing on the day in question from 2:30 p.m. into the night time. (Doc. 24, Ex. B, p. 13). James chose to cross over from one trail to another. (*Id*., pp. 11-12, 23). However, James stated that due to the lighting conditions, he could not distinguish the difference between the white snow and the bare ground when he came around a bend onto the 40-foot bare area in question. (*Id*., p. 23). John Capobianco stated that there may have been some bare spots on the Defendant's ski slopes on the day in question, and that "[u]sually on a whole ski mountain you do come across them here and there." (Doc. 24, Ex. D, pp. 45-46). John Capobianco also substantiated James' testimony that, due to the lack of lighting and absence of markings at the bare spot, it was difficult to determine where the snow ended and the ground began. While Defendant presented evidence that the bare area where James fell was so large and obvious under ski industry standards it did not require any markings, Klee stated that "if the snow ended and then after the snow the crossover had no snow" then the lollipops would be stuck in the snow part. (Doc. 22, ¶'s 15., 18. (sic) & Doc. 25, Ex. B, pp. 100, 103). We find that a jury should

decide if the bare spot where James fell was so large and obvious that no markings were required.

Plaintiff argues that, based on James' age, the Defendant cannot exculpate itself from liability on the basis of the lift ticket language. (Doc. 25, brief, pp. 3-4). However, we agree with the Defendant that it is not claiming that it is entitled to be released from liability based on the exculpatory language on the lift ticket. Rather, the lift ticket language was used by the Defendant to demonstrate that bare spots are an inherent risk of skiing and that James was, in fact, aware of this risk. (Doc. 26, p. 1).

We also agree with the Plaintiff that the case of *Murray v. Great Gorge Resort, Inc.*, 823 A. 2d 101 (N.J. Super Ct. Law Div. 2003), does provide support for her position in the present case, despite the fact that it relied upon New Jersey law.[2] (Doc. 26, pp. 2-3). As Plaintiff points out, the *Murray* Court indicated that under the facts of its case, the bare spot on the trail where the Plaintiff snowboarder fell could be found by a jury not to be an inherent risk. Similarly, under the undisputed facts of our case, as detailed above, we concur with Plaintiff that the 40-foot bare spot in the trail crossover where James fell coming around a bend at night with insufficient lighting and no markings could be found by a jury not to be an inherent risk of skiing, notwithstanding James' years of experience and the lift ticket language identifying such a risk.

Plaintiff also cites to testimony of Defendant's employee Klee that the ski patrol had authority and responsibility to close crossovers by using lollipops or netting, and that if snow ended and after the snow ended it was devoid of snow, the lollipops would be stuck in the snow part.

---

2. We also note, as Defendant suggests, that New Jersey law is not determinative as to whether our Defendant owed a duty to James in the instant case.

(Doc. 25, Brief, p. 7).  Plaintiff also states that, according to Defendant employee Fortner, Defendant erected one closed sign on the far side of the bare spot, 100 feet from where James fell.

Defendant states that Plaintiff has taken its employee's testimony out of context.  Defendant states that Klee was not responsible for closing crossovers or trails and that he did not have any accident investigation duties involving James' fall.  (Doc. 26, Ex. A).  Defendant also states that according to Fortner, the closed sign on the far side of the bare spot was not to close off the bare spot in question, as Plaintiff infers, but was put there because there was "probably some snow just past that, looks like you might be able to ski across it."  (*Id.*, Ex. B).

We find that a jury should hear the testimony of Klee and Fortner and determine whether the bare spot where James fell should have been marked.

Defendant concludes in its Reply Brief by stating that Plaintiff has not offered any evidence that it deviated from the ski industry standard regarding the placement of markers at bare spots. (Doc. 26, p. 3).  To the contrary, we find that an issue of material fact exists with respect to whether the bare spot in question while rounding a bend and attempting to crossover from one trail to another was so large and obvious as to not require markings.

Since we find that it is a question for the jury to decide if James' injury resulted from an inherent risk of skiing, we cannot conclude that the Defendant had no duty to him under the circumstances of this case.  Thus, looking at the facts of this case in a light most favorable to the Plaintiff, as we must for present purposes, we find that the jury must decide if the Defendant owed a duty to James at the time of his injury.

Accordingly, we shall deny Defendant's Summary Judgment Motion.

An appropriate order follows.

                                <u>**s/ Thomas M. Blewitt**</u>
                                **THOMAS M. BLEWITT**
                                **United States Magistrate Judge**

**Dated: June 15, 2005**